## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| BRANDON BRACH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action: 3:23-cv-2038 |
| | § | |
| | § | With Jury Demand Endorsed |
| EQUIFAX INFORMATION SERVICES LLC, | § | |
| EXPERIAN INFORMATION SOLUTIONS, | § | |
| Inc., TRANS UNION LLC, NATIONSTAR | § | |
| MORTGAGE LLC, successor by merger | § | |
| to PACIFIC UNION FINANCIAL, LLC, and | § | |
| LENDING CLUB CORPORATION, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## **COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Brandon Brach ("Plaintiff"), by and through counsel, for his Complaint against Defendants, Equifax Information Services LLC**,** Experian Information Solutions, Inc., Trans Union LLC, Nationstar Mortgage LLC, successor by merger to Pacific Union Financial, LLC, and Lending Club Corporation jointly, severally, and in solido, states as follows:

## I.  INTRODUCTION

1.       Three of the Defendants are consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and Defendants, Nationstar Mortgage LLC, successor by merger to Pacific Union

Financial, LLC and Lending Club Corporation are furnishers of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Nationstar Mortgage LLC, successor by merger to Pacific Union Financial, LLC is also liable for violating the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e). Plaintiff seeks to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2.      Plaintiff, Brandon Brach, is a natural person residing in DuPage County, Illinois, and is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c)**,** and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3.      Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4.      Upon information and belief, Defendant Experian Information Solutions, Inc., which

may also hereinafter be referred to as "Experian", "Defendant," "Defendants," "CRA," or "CRA Defendant," or "CRA Defendants," is an Ohio corporation that does business in this judicial district and may be served by delivering a summons to its headquarters, 475 Anton Blvd., Costa Mesa, California 92626. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

5.     Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

6.     Upon information and belief, Defendant Nationstar Mortgage LLC, successor by merger to Pacific Union Financial, LLC or Mr. Cooper, which may also hereinafter be referred to as "Nationstar," "Pacific Union/Nationstar," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Delaware limited liability company that does substantial business in

this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 8950 Cypress Waters Blvd., Coppell, Texas 75019. Nationstar is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

7.      Nationstar Mortgage LLC, successor by merger to Pacific Union Financial, LLC is a servicer as defined by RESPA, 12 U.S.C. v 2605(i)(2).

8.      Upon information and belief, Defendant Lending Club Corporation, which may also hereinafter be referred to as "Lending Club," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a California Corporation, that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 595 Market Street #200, San Francisco, California 94105. Lending Club is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

9.      As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, and TransUnion.

## III.  JURISDICTION AND VENUE

10.     Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiff also asserts actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully requests that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

11.     Venue is proper in this District, because CRA Defendants and Nationstar transact business in this District. Nationstar's headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiff's claims against Defendants occurred in the Northern District of Texas as further described. 28 U.S.C. § 1391.

12. Venue is further proper in this District, because CRA Defendants entered into agreements with Nationstar in this judicial district to receive credit reporting data concerning Plaintiff. Any and all requests to investigate Plaintiff's dispute(s) sent from the CRA Defendants as part of their reinvestigation was submitted to Nationstar's headquarters and investigated by the furnisher Nationstar using Nationstar's resources located at or closely connected to this judicial district. Nationstar managed Plaintiff's mortgage from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV.  FACTUAL ALLEGATIONS

### Background and Credit-Reporting Allegations for Plaintiff's Pacific Union and Nationstar Mortgage Accounts

13.     Upon information and belief, in or around February 2015 Plaintiff secured a mortgage for his property located at 891 Audubon Lane, Aurora, IL 60506.

14.     Sometime thereafter, Pacific Union Financial, LLC acquired Plaintiff's mortgage loan and assigned loan number 836000076xxxx, hereinafter ("Pacific Union mortgage account").

15.     On August 22, 2018, Plaintiff filed for a Chapter 13 bankruptcy. Redacted copies of Plaintiff's chapter 13 bankruptcy docket report and voluntary petition are each attached hereto as Exhibits "A" and "B" respectively.

16.     On February 15, 2019, Plaintiff Chapter 13 payment plan was confirmed. *See* Exhibit "A".

17.     Sometime thereafter, Pacific Union was sold, including all rights, liabilities, mortgage loan servicing responsibilities, and furnishing responsibilities, to Nationstar.

18.     Plaintiff's Pacific Union Mortgage was included with the above referenced sale, and thus, was transferred to Nationstar and assigned a loan number of 65411xxxx (hereinafter "Nationstar Mortgage" or "Nationstar Loan").

19.     Plaintiff's Nationstar Loan was paid in full on July 18, 2022, and upon information and belief, it was transferred to American Home Mortgage.

20.     On September 21, 2022, Plaintiff was discharged from his chapter 13 bankruptcy, and excepted from discharge Plaintiff's Pacific Union/Nationstar Mortgage. A redacted copy of Plaintiff's Chapter 13 Bankruptcy Discharge Order is attached hereto as Exhibit "C".

21.     Read in concert, Sections 1322(a)(2), 1322(b)(5), and 1328(a)(1) of the Bankruptcy Code, bar discharging home mortgage debts in a Chapter 13 Bankruptcy.

22.     On October 19, 2022, Glenn Stearns, Trustee for Plaintiff's Chapter 13 Bankruptcy filed a Chapter 13 Standing Trustee's Final Report and Account. A redacted copy of Plaintiff's Chapter 13 Bankruptcy Trustee's Final Report and Account is attached hereto as Exhibit "D".

23.     Throughout Plaintiff's Chapter 13 Bankruptcy, under direct or indirect order from the bankruptcy Trustee, timely monthly mortgage payments were made to the Pacific Union/Nationstar mortgage account.

24.     After discharge, and to this day, Plaintiff still lives in the home and makes timely and regular mortgage payments to the now American Home Mortgage, has historically made timely and regular payments to both the Pacific Union Mortgage and Nationstar Mortgage, and plans on continuing to make timely and regular mortgage payments to the now American Home Mortgage.

25.     Sometime in March 2023, Plaintiff obtained his three-bureau credit report and noticed that the Equifax, Experian, and Trans Union credit report(s) were not accurate. A redacted copy of Plaintiff's three-bureau credit report is attached hereto as Exhibit "E".

26.     Within the Equifax credit report Plaintiff noticed that it reported the Pacific Union mortgage account without the correct update that indicated that this secured debt was no longer part of the bankruptcy, as derogatory, as being in a wage earner plan and with references to the Chapter 13 Bankruptcy. The reporting is incorrect because Plaintiff complied with the terms of the chapter 13 bankruptcy plan, was successfully discharged—excepted the secured Pacific Union/Nationstar mortgage debt from being discharged, therefore, any remarks and/or references to Plaintiff's chapter 13 bankruptcy should have been removed from the Pacific Union/Nationstar Mortgage tradelines

after the Bankruptcy was discharged.[1] Plaintiff also noticed that Equifax reported the Nationstar account as being "Late 30 Days" for July 2022. The reporting is incorrect because the payments should not be reporting as late because of Plaintiff's chapter 13 bankruptcy filing.[2]

27.    Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

28.    Within the Experian credit report Plaintiff noticed that it reported the Pacific Union/Nationstar mortgage account without the correct update that indicated that this secured debt was no longer part of the bankruptcy, as potentially discharged through bankruptcy, as derogatory, as being in a wage earner plan and with references to the Chapter 13 Bankruptcy. The reporting is

---

[1] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

[2] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to have suppression codes associated with bankruptcy reporting accounts after the petition is filed, so that the ongoing payments history for the consumer's will not be reported.

incorrect because Plaintiff complied with the terms of the chapter 13 bankruptcy plan, was successfully discharged—excepted the secured Pacific Union/Nationstar mortgage debt from being discharged, therefore, any remarks and/or references to Plaintiff's chapter 13 bankruptcy should have been removed from the Pacific Union/Nationstar Mortgage tradelines after the Bankruptcy was discharged.[3] Plaintiff also noticed that Experian reported the Nationstar account as being "Late 30 Days" for July 2022. The reporting is incorrect because the payments should not be reporting as late because of Plaintiff's chapter 13 bankruptcy filing.[4]

29.     Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

---

[3] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

[4] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to have suppression codes associated with bankruptcy reporting accounts after the petition is filed, so that the ongoing payments history for the consumer's will not be reported.

30.     Within the Trans Union credit report Plaintiff noticed that it reported the Pacific Union/Nationstar mortgage account without the correct update that indicated that this secured debt was no longer part of the bankruptcy, as derogatory and with references to the Chapter 13 Bankruptcy. The reporting is incorrect because Plaintiff complied with the terms of the chapter 13 bankruptcy plan, was successfully discharged—excepted the secured Pacific Union/Nationstar mortgage debt from being discharged, therefore, any remarks and/or references to Plaintiff's chapter 13 bankruptcy should have been removed from the Pacific Union/Nationstar Mortgage tradelines after the Bankruptcy was discharged. [5] Plaintiff also noticed that Trans Union reported the Nationstar account as being "Late 30 Days" for July 2022. The reporting is incorrect because the payments should not be reporting as late because of Plaintiff's chapter 13 bankruptcy filing.[6]

31.     Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment

---

[5] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

[6] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to have suppression codes associated with bankruptcy reporting accounts after the petition is filed, so that the ongoing payments history for the consumer's will not be reported.

history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

32.     On or about May 2023, Plaintiff sent direct disputes to Equifax, Experian, and Trans Union, and requested that the CRA Defendants investigate the reporting of the Pacific Union and Nationstar mortgage accounts. Plaintiff requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit reports concerning the Pacific Union and Nationstar mortgage accounts.

33.     Within these dispute letter, Plaintiff described in great detail the issues and the misreporting following his bankruptcy and enclosed copies of either his bankruptcy docket report, trustee final report, and/or discharge order. Redacted copies of Plaintiff's unsigned dispute letters sent to Equifax, Experian, and Trans Union are attached hereto as Exhibits ""F, "G", and "H", respectively.

34.     Equifax responded to Plaintiff on June 16, 2023 and concerning the Pacific Union and Nationstar tradelines it was hard to decipher the result. A redacted copy of Equifax's Response to Plaintiff is attached hereto as Exhibit "I".

35.     Plaintiff then obtained an updated copy of his three-bureau credit report on August 16, 2023 and within the Equifax credit report Plaintiff noticed that the Pacific Union tradeline continued to report the same inaccuracies and the Nationstar tradeline was now missing, presumably deleted rather than modified. A redacted copy of Plaintiff's August 16, 2023 Three-bureau Credit Report is attached hereto as Exhibit "J".

36.     Equifax's responses, or lack thereof, were not the result of a reasonable investigation

into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the Pacific Union and Nationstar tradelines and gave no explanation as to why it failed to sufficiently update the Pacific Union/Nationstar Mortgage tradelines when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, was successfully discharged, and continued to make payments on the mortgage because it was still open following the bankruptcy discharge.

37.   Equifax's response(s) were not the result of reasonable investigations into Plaintiff's dispute(s) for they did not adequately evaluate or consider Plaintiff's information, claims, or evidence and failed to remedy the inaccuracies within the Pacific Union/Nationstar Mortgage tradelines.

38.   Plaintiff sent a very clear dispute, and yet Equifax made no changes to the disputed information, bankruptcy status, and/or account status.

39.   Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, continued to publish the inaccurate information regarding Plaintiff's Pacific Union tradeline, and inappropriately deleted Plaintiff's Nationstar tradeline.

40.   Upon the Plaintiff's request to Equifax for verification and addition regarding the Pacific Union/Nationstar mortgage accounts, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiff's information, claims or evidence. Importantly, Equifax failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff's with a response communicating the results. Further, Equifax did not make any attempt to substantially or reasonably verify the Pacific Union/Nationstar Mortgage accounts.

41.   In the alternative, and in accordance with Equifax's standard procedures, Equifax failed to contact Nationstar, therefore, failed to perform any investigation at all.

42.    In the alternative to the allegation that Equifax failed to contact Nationstar, it is alleged that Equifax did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

43.    Experian responded to Plaintiff on June 28, 2023 and concerning the Pacific Union tradeline reported, Status – Petition for Chapter 13 Bankruptcy and it was in the negative account section. Concerning the Nationstar tradeline, Experian removed the late notation for July 2022 but inaccurately reported, Status – Petition for Chapter 13 Bankruptcy and it was in the negative account section. A redacted copy of Experian's Response to Plaintiff  is attached hereto as Exhibit "K".

44.    Plaintiff then obtained an updated copy of his three-bureau credit report on August 16, 2023 and within the Experian credit report Plaintiff noticed that the Pacific Union and Nationstar tradelines confirmed the Experian response. *See* Exhibit "J".

45.    Experian's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the Pacific Union/Nationstar tradelines and gave no explanation as to why it failed to sufficiently update the Pacific Union/Nationstar tradelines when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, was successfully discharged, and continued to make payments on the mortgage account because it was still open following the bankruptcy discharge.

46.    Experian's responses were not the result of reasonable investigations into Plaintiff's dispute(s) for they did not adequately evaluate or consider Plaintiff's information, claims, or evidence and failed to remedy the inaccuracies within the Pacific Union/Nationstar Mortgage tradelines.

47.     Plaintiff sent very clear disputes, and yet Experian made no changes to the disputed

information, bankruptcy status, and/or account status.

48.     Experian chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Pacific Union/Nationstar accounts.

49.     Upon the Plaintiff's request to Experian for verification and addition regarding the Pacific Union/Nationstar mortgage accounts, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiff's information, claims or evidence. Importantly, Experian failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff with a response communicating the results. Further, Experian did not make any attempt to substantially or reasonably verify the Pacific Union/Nationstar Mortgage accounts.

50.     In the alternative, and in accordance with Experian's standard procedures, Experian failed to contact Nationstar, therefore, failed to perform any investigation at all.

51.     In the alternative to the allegation that Experian failed to contact Nationstar, it is alleged that Experian  did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

52.     Trans Union received Plaintiff's dispute on June 8, 2023. A redacted copy of the Certified Mail Receipt and Proof of Delivery for Plaintiff's Trans Union Dispute Letter is attached hereto as Exhibit "L".

53.     Upon information and belief, Trans Union did not respond to Plaintiff's dispute.

54.     Plaintiff then obtained an updated copy of his three-bureau credit report on August 16, 2023 and within the Trans Union credit report Plaintiff  noticed that the Pacific Union/Nationstar

tradelines were actually now missing, presumably deleted rather than modified. *See* Exhibit "J".

55.     Trans Union's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the Pacific Union/Nationstar tradelines and gave no explanation as to why it failed to sufficiently update the Pacific Union/Nationstar tradelines when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, was successfully discharged, and continued to make payments on the mortgage account because it was still open following the bankruptcy discharge.

56.      Plaintiff sent a very clear dispute(s), and yet Trans Union made no changes to the disputed information, bankruptcy status, and/or account status.

57.     Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and inappropriately deleted Plaintiff's Pacific Union/Nationstar accounts.

58.     Upon the Plaintiff's request to Trans Union for verification and addition regarding the Pacific Union/Nationstar mortgage accounts, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence. Importantly, Trans Union failed to maintain procedures which would ensure that, if any investigation took place, it would provide Plaintiff with a response communicating the results. Further, Trans Union did not make any attempt to substantially or reasonably verify the Pacific Union/Nationstar Mortgage accounts.

59.     In the alternative, and in accordance with Trans Union's standard procedures, Trans Union failed to contact Nationstar, therefore, failed to perform any investigation at all.

60.     In the alternative to the allegation that Trans Union failed to contact Nationstar, it is

alleged that Trans Union did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

**Qualified Written Request for Information and Notice of Error Sent to Nationstar**

61.     In or around April 2023, Plaintiff sent a "qualified written request" and a "notice of error" letter(hereinafter, "RESPA QWR and NOE") directly to Nationstar to investigate its servicing practices and reporting of the Nationstar mortgage account, and asked Nationstar to provide information and respond with any findings of any errors.

62.     Plaintiff sufficiently identified himself as a borrower and asked Nationstar to investigate its servicing and reporting of the Nationstar mortgage account and asked them to provide information and fix any errors.

63.     Specifically, Plaintiff clearly described that the credit reports reported "0/0/0" which means there were no months "30/60/90" days late in the last seven years, while at the same time, Experian showed a "30" for July 2022. Plaintiff argued both notations cannot be accurate. Plaintiff then described that any status like "Late 30 Days" is not accurate because his loan was clearly in the middle of a chapter 13 bankruptcy at that time, Nationstar knew that, and if Nationstar followed its procedures to ensure accuracy, July 2022, like the other months pending during the bankruptcy would report as "No Data". Finally, Plaintiff fully described that the monthly payments were made outside the plan every month to Nationstar. He provided Nationstar their own transaction history and noted to Nationstar that he made the "monthly payment" in the amount of $1,947.48 on May 2, 2022, and that he made a "monthly payment" in the amount of $1,947.48 on May 31, 2022, to cover June 2022's payment.

64.     A redacted copy of Plaintiff's unsigned RESPA QWR and NOE  to Nationstar is

attached hereto as Exhibit "M".

65.     A USPS Tracking receipt shows that Nationstar received and picked up Plaintiff's RESPA QWR and NOE concerning the Nationstar mortgage account on and it was confirmed as delivered. A redacted copy of the USPS Tracking receipt for the RESPA QWR and NOE to Nationstar concerning the Nationstar mortgage account is attached hereto as Exhibit "N".

66.     On May 2, 2023, Nationstar responded to Plaintiff's QWR and NOE concerning the Nationstar tradeline and failed to make any servicing changes or reporting corrections. Notably, Nationstar swiftly concluded in erroneous fashion that the loan was paid off in July 2022 but June 2022's payment had not been made.

67.     Nationstar failed to address that the credit report showed "0/0/0", that he was in the middle of bankruptcy, and his proof of his two full payments made in May 2022. A redacted copy of Nationstar's RESPA response regarding the Nationstar mortgage account is attached hereto as Exhibit "O".

68.     Nationstar's responses, or lack thereof, did not satisfy its obligations under RESPA and failed to fix errors that it knew existed in further violation of RESPA.

**Background and Credit-Reporting Allegations for Plaintiff's Lending Club Account**

69.     Plaintiff had opened a credit card account with Lending Club Corporation ("Lending Club") under the account number 11570xxxx, hereinafter ("Lending Club Account").

70.     On August 22, 2018, Plaintiff filed for a Chapter 13 bankruptcy and listed this account as non-priority unsecured debt. *See* Exhibits "A" and "B".

71.     On February 15, 2019, Plaintiff's Chapter 13 payment plan was confirmed. *See* Exhibit "A".

72.     On September 21, 2022, Plaintiff received a discharge from bankruptcy and Lending Club is listed in the notice to creditors as well as the Trustee's Final Report and Account *See* Exhibits "C" and "D" respectively.

73.     In May 2023, Plaintiff obtained his three-bureau credit report and noticed that the Equifax credit report was not accurate. *See* Exhibit "E".

74.     Within the Equifax credit report, Plaintiff noticed that it reported the Lending Club account as being an open account. This reporting was incorrect because Plaintiff's Lending Club credit account was listed in the petition, was discharged in Chapter 13 bankruptcy, and Lending Club was notified of the discharge. Lending Club was required to include remarks that the loan was discharged, and could not report that it was open because it made it appear that the debtor was liable on these discharged debts.

75.     In or around May 2023, Plaintiff sent a direct dispute to Equifax and requested that the CRA Defendant investigate the reporting of the Lending Club account. He requested that under the FCRA, the CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on his credit report concerning the Lending Club account.

76.     Within the dispute letter, he described in great detail the issues and the misreporting following his bankruptcy and enclosed copies of either his bankruptcy docket report, trustee final report, and/or discharge order. *See* Exhibit "F".

77.     Equifax responded to Plaintiff on June 16, 2023, and concerning the Lending Club account still showed no "Date Closed."  *See* Exhibit "I".

78.     He then obtained an updated copy of his three-bureau credit report on August 16, 2023 and within the Equifax credit report noticed that the reporting of the Lending Club tradeline

confirmed the response. The tradeline still reported as open. *See* Exhibit "J".

79.     Equifax's response was not the result of a reasonable investigation into Plaintiff's dispute and failed to remedy the inaccuracies within the Lending Club tradeline because he demonstrated the loan was discharged in bankruptcy.

80.     Equifax chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish inaccurate information concerning his Lending Club account.

81.     Upon the Plaintiff's request to Equifax for verification and addition regarding the Lending Club account, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of his information, claims or evidence and did not make any attempt to substantially or reasonably verify the Lending Club tradeline.

82.     In the alternative, Equifax failed to contact Lending Club, therefore, failed to perform any investigation at all.

83.     In the alternative to the allegation that Equifax failed to contact Lending Club, it is alleged that Equifax did forward some notice of the dispute to Lending Club, and Lending Club failed to conduct a lawful investigation.

## V.  GROUNDS FOR RELIEF

### COUNT I – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

84.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

85.     Equifax violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable

procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

86.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

87.    Plaintiff furnished Equifax the necessary documentation supporting Plaintiff's tradeline, yet Equifax continued to prepare a patently false consumer report concerning Plaintiff.

88.    Despite actual and implied knowledge that Plaintiff's credit reports were and are not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

89.    After Equifax knew or should have known Plaintiff's account statuses in relation to his bankruptcy was inaccurate, they failed to make the corrections. Further, Plaintiff did not request for the Nationstar mortgage tradeline be deleted.

90.    As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

91.    Equifax's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

92.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT II – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

93.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

94.     Equifax violated § 1681i by failing to update inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

95.     As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

96.     Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

97.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT III – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

98.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

99.     Experian violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

100.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

101.    Plaintiff furnished Experian the necessary documentation supporting Plaintiff's tradeline, yet Experian continued to prepare a patently false consumer report concerning Plaintiff.

102.    Despite actual and implied knowledge that Plaintiff's credit reports were and are not accurate, Experian readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

103.    After Experian knew or should have known Plaintiff's account status in relation to his bankruptcy was inaccurate, they failed to make the corrections.

104.    As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

105.    Experian's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In

the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

106.    The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT IV – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

107.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

108.    Experian violated § 1681i by failing to update inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

109.    As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

110.    Experian's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

111.    The Plaintiff is entitled to recover costs and attorney's fees from Experian in an

amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT V – TRANS UNION'S VIOLATION OF THE FCRA
## (15 U.S.C. §1681e(b))

112.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

113.    Trans Union violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

114.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

115.    Plaintiff furnished Trans Union the necessary documentation supporting Plaintiff's tradeline, yet Trans Union continued to prepare a patently false consumer report concerning Plaintiff.

116.    Despite actual and implied knowledge that Plaintiff's credit reports were and are not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

117.    After Trans Union knew or should have known Plaintiff's account status in relation to his bankruptcy was inaccurate, they failed to make the corrections. Further, Plaintiff did not request for the Pacific Union/Nationstar mortgage tradelines be deleted.

118.    As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance

goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

119.   Trans Union's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

120.   The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT VI – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

121.   The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

122.   Trans Union violated § 1681i by failing to update inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

123.   As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

124.   Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent

entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

125.    The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**COUNT VII – NATIONSTAR'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681s-2(b))**

126.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

127.    Defendant Nationstar violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

128.    Nationstar further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Pacific Union/Nationstar representations within Plaintiff's credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiff's dispute(s) of the Pacific Union/Nationstar representations, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Pacific Union/Nationstar representations to the consumer reporting agencies.

129.    As a result of Nationstar's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish,

humiliation, and embarrassment of credit denials.

130.    Nationstar's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## COUNT VIII – NATIONSTAR'S VIOLATION OF RESPA

131.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

132.    Under RESPA section 2605(e) and the implementing regulations, a servicer must conduct a reasonable investigation of the errors identified in the borrower's notice and make all appropriate corrections to the account.

133.    Nationstar has negligently and/or willfully violated section 2605(e) by failing to conduct a reasonable investigation of the errors brought to its attention by Plaintiff's request, correct the account accordingly, and left the account riddled with errors.

134.    Nationstar further violated § 2605(e) by failing to credit late charges and/or penalties as required under subsection (2)(A).

135.    Nationstar violated § 2605(k) by failing to respond and/or take timely action to Plaintiff's request as required under subsection (1)(C).

136.    Nationstar's failure to respond, conduct a reasonable investigation and make the appropriate corrections to Plaintiff's account, as well as credit late fees and/or penalties, has proximately caused Plaintiff's damages.

137.    Defendant Nationstar is therefore liable to Plaintiff for statutory and actual damages as provided in 12 U.S.C. § 2605(f).

138.    Plaintiff is also entitled to recover reasonable attorney's fees and costs expended in this proceeding from Nationstar as provided in 12 U.S.C. § 2605(f).

## COUNT IX – LENDING CLUB'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

139.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

140.    Defendant Lending Club violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

141.    Lending Club further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Lending Club representations within Plaintiff's credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiff's dispute(s) of the Lending Club representations, failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Lending Club representations to the consumer reporting agencies.

142.    As a result of Lending Club's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

143.    Lending Club's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual

damages under 15 U.S.C. § 1681o.

## VI.  VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

144.    Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII. DAMAGES

145.    Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Texas.

146.    Plaintiff respectfully requests that this Honorable Court award Plaintiff his litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA, RESPA, and/or other laws.

147.    The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

148.    Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiff and have been a substantial factor in causing credit denials and other damages.

149.    Plaintiff suffered a variety of damages, including economic and non-economic damages as prayed for herein.

150.    Defendants have negligently and/or willfully violated various provisions of the FCRA, and Nationstar has violated RESPA, and are thereby liable unto Plaintiff.

151.    Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiff, Brandon Brach, prays that this Honorable Court:

A.    Enter Judgment in favor of Plaintiffs and against Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., Trans Union LLC, Nationstar Mortgage LLC, successor by merger to Pacific Union Financial, LLC and Lending Club Corporation, jointly, severally, and in solido, for all reasonable damages sustained by Plaintiff, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, Nationstar's violation of RESPA,

applicable state law, and common law;

      B.    Find that the appropriate circumstances exist for an award of punitive damages to Plaintiff;

      C.    Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

      D.    Order that the CRA Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC, and Furnisher Defendants, Nationstar Mortgage LLC, successor by merger to Pacific Union Financial, LLC and Lending Club Corporation work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiff and/or any of Plaintiff's personal identifiers.

      E.    Grant such other and further relief, in law or equity, to which Plaintiff might show he is justly entitled.

Date Filed: <u>September 12, 2023</u>

                Respectfully submitted,

                <u>*/s/ Matthew P. Forsberg*    </u>
                Matthew P. Forsberg
                TX State Bar No. 24082581
                Matt@FieldsLaw.com
                FIELDS LAW FIRM
                9999 Wayzata Blvd.
                Minnetonka, Minnesota 55305
                (612) 383-1868 (telephone)
                (612) 370-4256 (fax)

                **LAW OFFICE OF JONATHAN A. HEEPS**

/s/ *Jonathan A. Heeps* .
Jonathan A. Heeps
TX State Bar No. 24074387
LAW OFFICE OF JONATHAN A. HEEPS
Post Office Box 174372
Arlington, Texas 76003
Telephone (682) 738-6415
Fax (844) 738-6416
jaheeps@heepslaw.com


COUNSEL FOR PLAINTIFF




## **JURY DEMAND**


Plaintiff hereby demands a trial by jury on all issues so triable.

September 12, 2023                    /s/ *Matthew P. Forsberg*
Date                                 Matthew P. Forsberg